IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| JOSEPH T.,[1] § § Plaintiff, § § v. § § ANDREW M. SAUL, Commissioner, § Social Security Administration, § § Defendant. § | 2:19-CV-12-Z |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**TO REVERSE THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the Commissioner's decision denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. After considering the pleadings, briefs, and administrative record, the undersigned recommends the Commissioner's decision be reversed, and the case be remanded to the Commissioner for further administrative review consistent with these findings and conclusions.

I.
FACTUAL/ PROCEDURAL HISTORY

In June 2011, plaintiff began to experience a gradual onset of pain to both his left and right shoulders as a result of his repetitive work activities as a welder. As he continued working, his

---

[1] It is this Court's practice to identify plaintiff using only the first name and last initial in determinative opinions in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

symptoms progressively worsened. Upon formally reporting the injuries to his employer, plaintiff was examined, provided physical therapy treatment and prescribed pain and non-steroidal anti-inflammatory medications as treatment for his injuries. Plaintiff was placed on "total temporary disability" on June 13, 2011, the day he reported his injuries, for purposes of workers' compensation benefits provided by his state of residence. (ECF 10-1, Tr. 315-16).

In September 2011, Dr. Pathi, an orthopedic surgeon, examined plaintiff and completed an evaluation of plaintiff's bilateral shoulders for plaintiff's worker's compensation carrier. Noting plaintiff had stated "his job requires a lot of heavy lifting," Dr. Pathi opined, under a sub-heading entitled "Work Status," that plaintiff "will remain on light duty work status" and "is to avoid pushing, pulling, overhead work, lifting more than 10 to 15 pounds." (Tr. 1021). In an October 2011 evaluation, Dr. Pathi modified his entry for plaintiff's "Work Status" stating plaintiff "should be off duty." (Tr. 1009).

In November 2011, Dr. Pathi performed surgery to repair a rotator cuff and a biceps tendon rupture in plaintiff's left shoulder. (Tr. 308, 981). Plaintiff was subsequently provided post-operative physical therapy treatment.

In written monthly evaluations completed November 2011 through March 2012, Dr. Pathi stated plaintiff "should be off duty" under the "Work Status" sub-heading. (Tr. 911; 926; 949; 965; 974; 979). Dr. Pathi also recommended physical therapy three times a week for four weeks to increase strength, range of motion and flexibility.

In an April 2012 evaluation, Dr. Pathi stated plaintiff "should be on light duty" with exertional limitations of "[n]o pushing, no pulling, no lifting more than 10-15 pounds, no overhead work" under the sub-heading "Work Status." (Tr. 900-04). Dr. Pathi continued his recommendation for physical therapy.

In July 2012, Dr. Kim, an orthopedic surgeon, examined plaintiff and provided the

Workers' Compensation Appeals Board (WCAB) with an initial medical evaluation of plaintiff's bilateral shoulders. (Tr. 315-24; 862-70). Dr. Kim's evaluation noted plaintiff was "presently not working," but that his bilateral shoulder injuries were ongoing and needed additional treatment. An August 2012 MRI indicated a recurrent rotator cuff tear in plaintiff's left shoulder necessitating revision surgery. (Tr. 328, 329-30). Dr. Kim opined that, as a result of his current condition due to his shoulder injuries, plaintiff was unable to perform any type of physical work and remained "temporarily totally disabled. (Tr. 323, 869).

In October 2012, Dr. Pathi performed a second surgery to repair the rotator cuff tear in plaintiff's left shoulder. (Tr. 345-48). In February 2013, Dr. Pathi performed surgery to repair a rotator cuff tear in plaintiff's right shoulder. (Tr. 751).

In additional written monthly evaluations completed September 2012 through May 2013, which was slightly prior to plaintiff's second surgery through a few months after plaintiff's third surgery, Dr. Pathi stated plaintiff "should be off duty" under the sub-heading "Work Status" and recommended physical therapy three times a week for four weeks to increase strength, range of motion and flexibility. (Tr. 335, 343, 357, 362, 368, 375, 380, 385, 389, 393, 404, 411, 416, 421, 515, 685, 729, 735, 742, 750, 761, 770, 775, 780, 790, 798, 804, 819, 829).

In a July 2013 evaluation, under the "Work Status" sub-heading, Dr. Pathi opined plaintiff "should be on light duty," with "[n]o pushing, no pulling, no lifting more than 10-15 pounds, no overhead work." (Tr. 426, 659). Dr. Pathi also again recommended plaintiff continue physical therapy of the bilateral shoulders. (Tr. 425).

At the end of July 2013, Dr. Kim examined plaintiff and provided a re-evaluation of plaintiff's condition to the WCAB. (Tr. 427-33; 714-20). Dr. Kim, noting plaintiff was not currently working and had not worked since his last evaluation in July 2012, had continued pain

and weakness in both shoulders and required additional physical therapy and a strengthening program. Dr. Kim found plaintiff remained "temporarily totally disabled" at that time.

In August and September 2013, Dr. Pathi completed evaluations wherein he repeated the same "light duty" restriction and "[n]o pushing, no pulling, no lifting more than 10-15 pounds, no overhead work" exertional limitations for plaintiff's "Work Status" initially set forth in his April 2012 evaluation and reinstituted in his July 2013 evaluation. (Tr. 442, 643, 649). The doctor continued his recommendation of physical therapy of the bilateral shoulders to increase strength, range of motion and flexibility.

In his October 2013 evaluation, Dr. Pathi opined plaintiff "should be off work" under the sub-heading "Work Status" without identifying the exertional limitations he had defined when previously restricting plaintiff to "light duty." Dr. Pathi continued to recommend plaintiff complete physical therapy of the bilateral shoulders. (Tr. 452-53; 623-24).[2]

In November 2013, Dr. Kim provided the WCAB with a medical re-evaluation noting that with his continued physical therapy, plaintiff's range of motion and motor strength had improved. (Tr. 496-501). Dr. Kim thus found plaintiff had most likely reached "maximum medical improvement" for his shoulders. Under a subheading entitled "Disability Status," Dr. Kim noted Dr. Pathi had released plaintiff as "temporarily/partially disabled" on July 8, 2013 (when Dr. Pathi allowed plaintiff to return to "light duty"), with exertional restrictions of "no lifting of more than 15 pounds and no overhead work," and that as plaintiff had reached maximum medical improvement in his shoulders, plaintiff would "remain temporarily/partially disabled" with regard to his shoulder injuries. (Tr. 501, 619, 709). Dr. Kim, however, determined plaintiff had a separate

---

[2]In each of his subsequent follow-up examinations and evaluations from November 2013 to May 2014, Dr. Pathi continued the same "Work Status" entry for plaintiff as "should be off work" without identifying specific exertional limitations as he did when he released plaintiff to "light duty." (Tr. 510, 525, 533, 543, 571, 590, 595, 604, 1043).

problem of ulnar compression and neuropathy that needed additional work ups and possible surgical treatment.

In December 2013, subsequent studies reflected there was no evidence plaintiff had carpal tunnel syndrome, ulnar neuropathy or other pertinent neuropathy and, therefore, there was no need for further treatment of his bilateral hand symptoms. (Tr. 516-19; 526-27; 596-97; 605-08; 609-12, 700-01). Consequently, in March 2014, Dr. Kim provided the WCAB with an evaluation finding plaintiff had also reached maximal medical improvement with regard to his complaints of ulnar nerve compression in the bilateral upper extremities.[3] Dr. Kim then discussed, under a subheading entitled "Factors of Disability," plaintiff's subjective complaints and objective findings with regard to plaintiff's shoulders that had previously been deemed maximally medically improved. Dr. Kim then stated, under an additional subheading entitled "Work Restrictions," that plaintiff "has a permanent work restriction of no pushing, pulling or lifting greater than 15 pounds and no overheard work." (Tr. 546, 551, 557, 583, 696). Dr. Kim did not provide any specific explanation for the work restrictions or its permanent duration. Dr. Kim provided plaintiff with a combined 19% impairment for his left shoulder and 9% for his right shoulder, as well as a 9% impairment for left hand weakness and 7% for his right hand "most likely due to ulnar nerve irritation." Dr. Kim also stated that if plaintiff cannot be accommodated with the permanent work restrictions then he would become a "qualified injured worker."

In June 2014, Dr. Pathi completed his last evaluation in the record wherein he stated plaintiff "should be on light duty" with "[n]o pushing, no pulling, no lifting more than 10-15 pounds, no overhead work" exertional limitations for plaintiff's "Work Status." (Tr. 1048).

---

[3]The March 2014 evaluation was based on the nerve conduction studies and prior assessments and did not involve an additional in-person examination.

On March 25, 2015, plaintiff applied for disability insurance benefits, alleging disability beginning June 13, 2011. (Tr. 193, 209-19). The time period at issue in the application was June 13, 2011, plaintiff's alleged onset date, through December 31, 2014, the date he was last insured. (Tr. 209). Plaintiff was 44 years old on the date he alleged his disability began and 47 years old as of the date last insured. (Tr. 54). Plaintiff advised he has a 12th grade education and previously worked as a welder prior to the onset of his disability. (Tr. 41, 61, 224-26). On June 26, 2015, the Social Security Administration denied plaintiff's application upon initial consideration. (Tr. 54-63). On September 3, 2015, the Administration denied plaintiff's application upon reconsideration. (Tr. 64-71). In November 2015, almost 11 ½ months after the date late insured, Dr. Stanton, an orthopedic surgeon, performed a second surgery to repair the rotator cuff tear in plaintiff's right shoulder. (Tr. 1142-43; 1207-08).

On January 9, 2018,[4] an Administrative Law Judge (ALJ) conducted a hearing on petitioner's application. (Tr. 35-53). At the hearing, the ALJ admitted a complete administrative file for plaintiff into evidence and heard sworn testimony from both plaintiff and a Vocational Expert (VE). (Tr. 39-52). Prior to the VE's testimony, the ALJ confirmed the VE's understanding that her "testimony must be consistent with the *Dictionary of Occupational Titles* (DOT)" without objection by plaintiff's counsel. (Tr. 50). The ALJ then asked the VE to consider a hypothetical individual of plaintiff's age, education, and work experience, who was limited to performing sedentary work, and (1) could not climb ladders, ropes, or scaffolds, (2) could not perform constant gross manipulation, and (3) could not perform above the shoulder level or overhead work. (Tr. 51). The ALJ did not include in the hypothetical any specific restrictions on pushing, pulling or lifting beyond those necessarily included in the definitions of sedentary work. In response to the ALJ's

---

[4]The undersigned notes the transcription of the hearing indicates in multiple places, including the ALJ's verbal opening statement, that the hearing took place on January 9, <u>2017</u>.  (Tr. 35, 37, 53).

inquiry as to whether there was any work such an individual could perform, the VE identified three (3) sedentary exertional level jobs: document preparer (DOT 249.587-018), table worker (DOT 739.687-182, and assembler (DOT 734.687-074). (Tr. 51-52). When the ALJ added the restriction that the hypothetical individual would miss more than two days of work per month due to a combination of medical conditions, the VE testified there would not be other work the individual could perform. (Tr. 52). When plaintiff's counsel was provided the opportunity to question the VE, she added the restriction that the hypothetical individual "required a break every two hours lasting up to an hour," to which the VE testified "there would be no work" such an individual could perform. (*Id.*). Counsel did not ask the VE to consider any additional restrictions to the hypothetical individual scenario such as a "no push" or "no pull" restriction.

On February 7, 2018, the ALJ issued a decision finding that based on plaintiff's application, he was not disabled under the Social Security Act through December 31, 2014, the date he was last insured. (Tr. 10-18). The ALJ found plaintiff had not engaged in substantial gainful activity from his alleged onset disability date through his date last insured. (Tr. 12). The ALJ found plaintiff had severe impairments of (1) peripheral neuropathy diagnosed to include ulnar nerve compression, and (2) degenerative joint disease of bilateral shoulders post bilateral shoulder surgeries. (*Id.*). However, the ALJ found these severe impairments did not meet or were not medically equivalent in severity to any of the listed impairments under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (Tr. 13).

The ALJ, noting she had considered the entire record, found plaintiff, through the date last insured, had the residual functional capacity (RFC) to perform sedentary work[5] with the following

---

[5] Sedentary work is defined in 20 C.F.R. § 404.1567(a): "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

restrictions: (1) never climb ladders, ropes, or scaffolds; (2) no constant gross manipulation; and (3) no overhead work. (Tr. 13-16). In reaching this RFC determination, the ALJ stated she "reviewed and considered the various opinions regarding relatively short term limitations" made by plaintiff's treating and examining doctors as part of his workers' compensation claim and treatment. (Tr. 16). The ALJ explained she considered the disability decisions and treatment providers' opinions based on the criteria set forth in 20 C.F.R. § 404.1512(b)(5) and 416.912(b)(5). Noting that in connection with plaintiff's surgeries and treatment, plaintiff's providers had opined that plaintiff "should be off duty and return to work at various intervals after his alleged onset date of disability," the ALJ advised that use of the term "off duty" may have indicated plaintiff was unable to return to his work as a welder rather than an inability to do all work. Consequently, the ALJ gave "partial weight" to such opinions. (*Id.*).

The ALJ explained she gave "more weight" to the "more permanent limitations assessed by the physicians" who evaluated plaintiff as part of the workers' compensation claim. (*Id.*). Specifically, the ALJ stated she gave "significant weight" to Dr. Pathi's July 2013 opinion that plaintiff "should have no lifting over 15 pounds and no overhead work," as such opinion was "well supported by the medical evidence of record" and Dr. Pathi treated plaintiff for his shoulder impairments. (*Id.*). The ALJ also gave "significant weight" to Dr. Kim's March 2014 opinion that plaintiff had reached maximum medical improvement and "has a permanent work restriction of no pushing, pulling or lifting greater than 15 pounds and no overhead work," explaining these opinions were also "well supported and consistent with the medical evidence of record." (*Id.*). The ALJ further noted she had included the stated "permanent restrictions" in her assessment of plaintiff's RFC. In summary, the ALJ found that, through the date last insured, plaintiff had the RFC to perform sedentary work "except: never climb ladders, ropes, or scaffolds, no constant gross manipulation and no overhead work." (*Id.*). The ALJ explained the RFC "was based

substantially on the objective medical evidence of record, such as hospital and treatment records; as well as the subjective evidence consisting of the testimony and previous statements of the [plaintiff] as to his abilities to complete daily activities." (*Id.*).

The ALJ then determined, based on plaintiff's RFC and the VE testimony, that plaintiff's past relevant work (PRW) exceeded the exertional requirements of plaintiff's RFC and, therefore, plaintiff was unable to perform his PRW as a welder,[6] as actually or general performed, during the time period at issue. (Tr. 16-17). Utilizing the Medical-Vocational Rules as a framework, the ALJ determined the transferability of job skills was not material to the determination of plaintiff's disability. (Tr. 17).

The ALJ concluded, based on the VE's hearing testimony, there were other jobs that existed in significant numbers in the national economy that plaintiff could have performed through the date last insured. (Tr. 18). Accordingly, the ALJ found plaintiff was not under a disability, as defined by the Social Security Act, at any time from June 13, 2011, the alleged onset date, through December 31, 2014, the date last insured. (*Id.*).

On December 28, 2018, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision as the Commissioner's final decision. (Tr. 1-3). *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner

---

[6]The job of welder is defined as heavy work with an SVP of 5. DOT 810.384-014. Heavy work as defined in 20 C.F.R. § 404.1567(d): "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."

applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, this Court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the Court finds substantial evidence to support the Commissioner's decision, then the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### III.
### ISSUES

Plaintiff contends the ALJ's decision that he is not under a disability, as defined in the Social Security Act, at any time from June 13, 2011 through December 31, 2014 (plaintiff's alleged onset date through the date he was last insured) is not supported by substantial evidence. Plaintiff

asserts numerous bases for his contention that various findings in the ALJ's decision, as well as her ultimate decision that plaintiff is not disabled, are not properly supported by substantial evidence. As stated above, the undersigned finds the ALJ's decision should be reversed for a limited remand; therefore, only portions of the following "specific" issues raised by plaintiff will be discussed:

1. The ALJ's RFC finding is not supported by substantial evidence because it does not incorporate all of plaintiff's functional limitations identified by his treating physician, *viz.,* a restriction that he can perform "no pushing" and "no pulling" with his upper extremities;

2. In determining plaintiff is not disabled, the ALJ failed to apply proper legal standards or otherwise committed legal error by relying on the outdated DOT in soliciting VE testimony and finding there are "other jobs" plaintiff can perform.

### A. RFC Finding for a Limited Range of Sedentary Work

Dr. Pathi, plaintiff's primary treating medical source, provided the following opinions restricting plaintiff's activities for the time period at issue (June 13, 2011 – December 31, 2014):

| | |
|---|---|
| September 2011 | Specific medical opinion that as a result of his impairments, plaintiff "is to avoid pushing, pulling, overhead work, lifting more than 10 to 15 pounds" |
| Oct. 2011 – March 2012 | No specific medical opinion as to plaintiff's exertional limitations due to his impairments but a "work status" opinion that plaintiff "should be off duty" |
| April 2012 | Specific medical opinion that plaintiff's impairments limit him to "no pushing, no pulling, no lifting more than 10-15 pounds, no overhead work" and a "work status" opinion that plaintiff "should be on light duty" |
| Sept. 2012 – May 2013 | No specific medical opinion as to plaintiff's exertional limitations due to his impairments but a "work status" opinion that plaintiff "should be off duty" |

| | |
|---|---|
| July 2013 – Sept. 2013 | Specific medical opinion that plaintiff's impairments limit him to "no pushing, no pulling, no lifting more than 10-15 pounds, no overhead work" and a "work status" opinion that plaintiff "should be on light duty" |
| Oct. 2013 – May 2014 | No specific medical opinion as to plaintiff's exertional limitations due to his impairments but a "work status" opinion that plaintiff "should be off work" |
| June 2014 | Specific medical opinion that plaintiff's impairments limit him to "no pushing, no pulling, no lifting more than 10-15 pounds, no overhead work" and a "work status" opinion that plaintiff "should be on light duty" |

Dr. Kim, plaintiff's examining and evaluating medical source, provided the following opinions restricting plaintiff's activities:

| | |
|---|---|
| July 2012 | Plaintiff unable to perform any type of physical work |
| July 2013 | No specific restrictions; noted treatment ongoing |
| November 2013 | Noted Dr. Pathi had stated restrictions of "no lifting of more than 15 pounds and no overhead work" |
| March 2014 | Plaintiff has a permanent work restriction of "no pushing, pulling or lifting greater than 15 pounds and no overhead work" |

As noted above, the ALJ gave only "partial weight" to Dr. Pathi's opinions that plaintiff should be "off duty." However, the ALJ explicitly gave "significant weight," although not "controlling weight," to the "more permanent limitations assessed by the physicians." The ALJ, however, inaccurately stated Dr. Pathi's July 2013 report as providing two limitations: that plaintiff "should have no lifting over 15 pounds and no overhead work," rather than the doctor's actual stated opinion that plaintiff is limited in four areas: "no pushing, no pulling, no lifting more than 10-15 pounds, no overhead work." The ALJ did, however, accurately restate Dr. Kim's March

2014 medical opinion as to plaintiff's "permanent work restriction" of "no pushing, pulling or lifting greater than 15 pounds and no overhead work." The ALJ then advised that as "*these* opinions" were "well supported," "consistent with the medical evidence of record," and given "significant weight," and further that she had included "these permanent restrictions" in her RFC finding. It is a reasonable interpretation that the ALJ was referring to both Dr. Kim's "permanent work restriction" of "no pushing, pulling or lifting greater than 15 pounds" as well as Dr. Pathi's *misstated* opinion of "no lifting over 15 pounds and no overhead work" rather than his actual opinion of "no pushing, no pulling, no lifting more than 10-15 pounds, no overhead work." Despite her purported inclusion of the referenced physicians' opinions in the RFC finding, the ALJ then limited plaintiff to the more restrictive level of *sedentary* work in her RFC, a physical exertional level of work that involves "lifting no more than 10 pounds at a time," 20 C.F.R. § 404.1567(a), as opposed to the 15-pound weight threshold the ALJ had gleaned from the physicians' opinions and recited in her decision. Moreover, the ALJ did not reference any specific restriction on pushing or pulling, either as limited to 15 pounds, 10-15 pounds, or as totally prohibited by a "no" pushing and "no" pulling limitation, although all were noted in the medical evidence. As noted, the ALJ did include the "no overhead work" limitation set forth in Drs. Pathi and Kim's opinions.

Interpreting Dr. Pathi's statements in his April 2012, July - September 2013, and July 2014 evaluations as medical opinions that plaintiff's impairments limit his separate and distinct abilities to push and pull rather than collectively limiting his abilities to push, pull *and* lift, plaintiff argues the ALJ's RFC finding is not supported by substantial evidence because it fails to include Dr. Pathi's actual medical opinion that plaintiff is limited by his impairments to "no pushing" and "no pulling." Plaintiff contends that if the ALJ had properly included the "no pushing" and "no pulling" limitations from Dr. Pathi's medical opinions, to which the ALJ gave significant weight and indicated she was including in the RFC (although misstated in her decision), plaintiff would

be precluded from performing sedentary work.

Although the regulations generically define sedentary work as involving "lifting no more than 10 pounds at a time," 20 C.F.R. § 1567, subsequent sections clarify that sedentary work is limited as to all exertional strength demands. 20 C.F.R. § 404.1569, 404.1569a. The DOT (Appendix C, Sec. IV) and its companion supplemental publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (Appendix C, Sec. 1.) (SCO), further define the strength demands of sedentary work. The various publications, which the Commissioner recognizes as authoritative and routinely relies upon, *see* SSR 00-4p and *Defendant's Brief* at 8 n. 1, set forth that sedentary work requires an individual to exert up to 10 pounds of force occasionally and a negligible amount of force frequently to, as relevant here, lift, push, and pull. The ability to perform sedentary work requires that an individual be able to meet these strength demands.

The undersigned initially notes the push/pull limitation of 15 pounds set forth in Dr. Kim's opinion would not limit plaintiff's ability to perform the occasional 10-pound push/pull exertional force required of sedentary work. Consequently, to the extent, if any, plaintiff complains of the ALJ's failure to specifically include Dr. Kim's push/pull limitation set forth in and cited by the ALJ in her decision, the undersigned finds no legal error. The undersigned will therefore limit further discussion of this issue to Dr. Pathi's medical opinions on plaintiff's push/pull limitations, the ALJ's interpretation of Dr. Pathi's medical opinions, and the ALJ's failure to specifically include a "no" pushing and "no" pulling limitation in her determination of plaintiff's RFC.

The undersigned further notes it does not appear that the ALJ intentionally "rejected" any part of Dr. Pathi's medical opinions concerning plaintiff's limitations due to his shoulder impairments. It is unclear, however, whether the ALJ overlooked Dr. Pathi's push/pull limitations altogether (having failed to reference them at all in her decision), or simply interpreted Dr. Pathi's

opinions as merely limiting plaintiff's ability to "push, pull and lift" up to the 15 pound limitation (or even Pathi's actual stated weight limitation of 10-15 pounds), a limitation that would not affect plaintiff's ability to do sedentary work and thus need not be included in the RFC determination. The ALJ's specific reference to Dr. Pathi's lifting limitation (even if misstated) and "no" overhead work restriction, both included in the same opinions, does not provide the Court with any guidance as to the reasoning behind the ALJ's failure to address such in her decision. Further complicating the issue is whether it was, in fact, Dr. Pathi's medical opinion that plaintiff is limited by his impairments to "no" pushing and "no" pulling as argued by plaintiff.

Regarding whether the ALJ committed legal error under the specific circumstances of this case, the undersigned finds the incongruities between the medical opinions, particularly Dr. Pathi's opinions, the ALJ's statements in her decision and ultimate RFC finding, as well as the possible ambiguity of Dr. Pathi's opinions, sufficiently undermines the ALJ's RFC finding so as to render it unsupported by substantial evidence. Simply put, the undersigned finds that under this convoluted record, remand is necessary to resolve possible conflicts in the evidence, as well as inconsistencies between the medical opinions and the ALJ's findings in her decision. "This ambiguity warrants remand for clarification, because it precludes the Court from conducting meaningful review." *Charles R. v. Berryhill*, 2018 WL 4075725, at 4 (N.D. Tex. Aug. 27, 2018) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 197 (1947) ("[W]e must know what a decision means before the duty becomes ours to say whether it is right or wrong.") (quoting *United States v. Chicago, M., St. P. & P.R. Co.*, 294 U.S. 499, 511 (1935)). *See also Williams v. Colvin*, 2016 WL 4800441, at 3 (N.D. Tex. Sept. 13, 2016).

Specifically, it appears remand should include, *inter alia*:

1. Whether the ALJ recognizes Dr. Pathi's medical opinions impose pushing and pulling limitations on plaintiff's functioning as a result of his impairments?

2. If the ALJ recognizes such limitations in the medical opinions, does the ALJ interpret such pushing and pulling limitations as limited only to a 15-pound (or even 10-pound) weight restriction?

3. Or, does the ALJ interpret such pushing and pulling limitations as prohibiting any degree or amount of pushing and pulling by the use of the qualifier "no" prior to each of the strengths of pushing and pulling (similar to the "no" overhead work limitation)?

4. If so, does the ALJ "reject" such a limitation and, if so, on what bases?

5. Does the ALJ find plaintiff's RFC to be the same as in the current decision?

6. If so, the ALJ should analyze the next steps only if necessary.

The undersigned acknowledges that "limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base." SSR 96-9p. However, it is unclear as to the amount of preclusive effect a totally prohibitive "no" pushing and "no" pulling limitation will have on the ability to do other work if the ALJ interprets the medical opinions to impose such a limitation and does not reject such a limitation.

The undersigned also acknowledges the Fifth Circuit has held the harmless error doctrine applies in Social Security disability cases, as "[p]rocedural perfection in administrative proceedings is not required' as long as "the substantial rights of a party have not been affected." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998) (quoting *Mays v. Bowen*, 837 F. 2d 1362, 1364 (5th Cir. 1988). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015) (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). However, given the specific circumstances of this case, while it may be improbable that the ALJ would have reached a different disability determination after addressing the issues outlined above, the undersigned cannot say with certainty that it is inconceivable that the ALJ would have reached a different conclusion.

### B. Legal Error in Relying on the DOT

In support of specific issues asserted challenging other portions of the ALJ's decision finding plaintiff not disabled, plaintiff contends, overall, that the ALJ failed to apply proper legal standards or otherwise committed legal error by relying on the outdated DOT, namely in soliciting VE testimony and finding there are "other jobs" plaintiff can perform. As this argument could be relevant on this limited remand, the undersigned addresses plaintiff's contentions.

Plaintiff argues it was improper for the VE and the ALJ to rely on the DOT, as it is necessarily outdated. Specifically, plaintiff asserts the DOT should no longer be considered relevant because the Department of Labor last revised the publication in 1991. (ECF 12 at 11-12). As support for his position, plaintiff notes the provision in 20 C.F.R. § 404.1565 that restricts the Commissioner's consideration of a claimant's past work experience to work "done within the last 15 years" when assessing disability status. That section justifies the 15-year time limitation given the presumptive gradual change in skills and abilities to perform said work. Plaintiff asserts that because the DOT's last revision date falls well outside this 15-year standard, there is no basis for finding the DOT is still authoritative. Plaintiff suggests replacing the use of the DOT in Social Security cases by relying on the Bureau of Labor of Statistics under the Standard Occupational Code (SOC) and the Occupational Outlook Handbook (OOH) for job classifications.

Title 20 C.F.R. § 416.966(d) addresses how the Commissioner will consider whether work exists in the national economy in determining whether a claimant is disabled. Specifically, that section states the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications" and lists the following five (5) publications: (1) the DOT, published by the Department of Labor; (2) *County Business Patterns*, published by the Bureau of the Census; (3) *Census Reports,* also published by the Bureau of the

Census; (4) *Occupational Analyses*, prepared for the Social Security Administration by various State employment agencies; and (5) the OOH, published by the Bureau of Labor Statistics. However, SSR 00-4p provides that in making disability determinations, the Commissioner will "rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." Section 416.966(d) and SSR 00-4p remain in effect. Consequently, any argument that the ALJ fails to apply proper legal standards or otherwise commits legal error by relying on DOT job descriptions as relevant evidence to support a finding that there is other work plaintiff can perform despite his severe impairments is without merit.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the Commissioner finding plaintiff JOSEPH T. not disabled and not entitled to disability benefits between June 13, 2011 and December 31, 2014 be REVERSED and the case REMANDED for further administrative review consistent with these findings and conclusions.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these findings, conclusions and recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 29, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

SS\FCR\TESTER-12.REV-REMAND:2